All right, Mr. Mitchell, whenever you're ready. Thank you, Your Honor. May it please the Court? Yes, sir. We have sort of four issues cooking here. The last one, which has kind of become the tail that's wagged the dog, is a supplemental issue that the Court permitted me to address regarding the appellant's status as an armed career criminal in light of the United States v. Johnson. The government initially responded to that brief with the position that it agrees that the appellant is not an armed career criminal, relying on the Maryland robbery as the party's brief. The government then filed a supplemental response, which I think this Court officially green-lighted last week. But the brief has been filed for quite some time. That's a very hot topic in this Court right now and has been briefed, I think, in several other cases. So unless the Court has a particular interest in delving into it, I'm just going to respond to the government's response very briefly. The government, in its brief, takes the position that Maryland robbery, while not qualifying under the force clause because of its elements, qualifies as extortion under the generic definition of extortion in the federal system. There's a case now pending in this Court, and I think a couple of cases, but one of them is United States v. Riley. That's been briefed. I'm not sure if it's been argued, Your Honor. But I will adopt the position that the appellant in that case adopts regarding the generic definition of extortion, which has as an element consent. The consent of the party parting with the property is an element of extortion in the federal definition and is not an element of the crime of robbery. So I think that that part of the brief is pretty well vetted for multiple parties, and so I'll move on back to the other issues, unless you gentlemen have any questions about that. What would the effect of the Mathis case be in the Supreme Court right now? Yes, Your Honor. So, shouldn't we just, at the very least, I would guess we would have to wait. I can't. That Court is going to rule on that. That's critical. That is absolutely critical. It's potentially decisive as to whether or not robbery is a divisible statute to begin with. And the government's, in my response to the government's position on that was that that is a pending issue in the Supreme Court. The third issue I raised in the brief, I'd like to talk about simply because it's not one that I think comes up very often. There's some very definite case law on it. But the discussion is interesting. It's this Juror 11 who said by affidavit something to the effect of, I wanted to deliberate further. I was not convinced of the defendant's guilt. But because of what was said to me by a court officer, and that is something to the effect of you have to reach a verdict, according to her, according to the affidavit, you have to reach a verdict tonight. She says, well, I have to get home to my kid. And then there's this talk of the Court has to go on vacation. That was the crux of her affidavit. Mr. Martin, the appellant, presented that by counsel to the Court. The government reacted to it with all the power and efficiency to which they are accustomed and sent FBI agents to interview her and interview her mom and gather other affidavits. And they had this argument before the Court. What the defendant, the then defendant now appellant, was asking for was an evidentiary hearing. And the reason why our hackles are so up about how that was dealt with is because of the standard that the Court applied in deciding whether or not the defendant was entitled to a full evidentiary hearing. Now, I'm of course not being critical of the District Court in any real sense, because this is not something that comes up very often. But because of the way the government argued that the matter should be dealt with, the strong, substantial, and incontrovertible evidence that a specific, non-speculative impropriety occurred, well, that's not the standard. The standard is a credible allegation. But even if the standard was wrong, there's evidence to show this juror's allegations weren't credible. There sure was, Your Honor. That's what the government did. But I am not at the stage where I'm ready to take the position, and none of us can be at the stage where we're ready to take the position, that what the juror said was true. What the complaint is, is that a hearing should have been conducted to determine whether or not what the juror said was true. And I think that's what – No, go ahead. I think that's what Counsel Below was asking for. He said, I need to have an evidentiary hearing. I'd like to have this juror testify. I'd like to vet this and determine whether or not – I'd like the Court to make a determination after an evidentiary hearing whether or not what the juror said was in You don't get a hearing if the allegations aren't credible. Well, I suggest that they are credible, Your Honor. This is an affidavit of a juror under oath. That is a credible allegation. And I think the distinction is important between allegation and evidence. The government uses the phrase evidence in its briefs several times. What the case law calls for is a credible allegation. And the juror says, under oath, I was told that I had to reach a verdict now. This is an outside influence having an impact on the way I decide the case. So the allegation, Your Honor, I think is credible. Now, at the end of the day, you know, whether or not the District Court would believe and make a substantive determination on the merits is another matter altogether. But we never even got that far because of the standard that the Court applied, which was in this incontrovertible evidence. You want a hearing because you believe there's more evidence you could get from other witnesses or is it because you want to cross-examine those that have already been interviewed? That, Your Honor. I don't think there is, I don't think there is a, I think the universe of the evidence on the matter was sort of outlined by the investigation by the FBI and by defense counsel. But getting these witnesses under oath for an actual evidentiary hearing as opposed to just deciding the matter on the affidavits is what. Is there anything you can point to that would show that the information or the testimony that was obtained from the FBI or others is inaccurate or not true? Well, only insofar as it conflicts with the allegations of Juror Number 11. There's a lot of reliance on notes. Juror 11 basically says, and again I'm paraphrasing, I had no one to watch my child. I was told that I was putting Hobson's choice either beside the case or not have anyone to look after my child. According to the FBI's investigation, that position was controverted by the courtroom deputy as well as the, as well as the affion's mother. So but those are two exclusive factual positions that I think warrant a hearing. Again, it's just a credible allegation and I think her statement under oath is enough to just bring it before the court for a full evidentiary hearing. But then that means there's no sense the district court making a credibility determination. What you're saying is the rules should be automatically accept what the juror says as true and then determine from that whether or not there ought to be a hearing. Well, that's not quite what I'm saying, Your Honor. What I'm saying is that the district court needs to make a determination, has there been an allegation of extrajudicial influence and is it credible? Is it credible? Not is it true in the end or correct? And then once that happens, then you can get into the nuts and bolts and the mechanics of who's right and who's wrong. Well, I admit there are some allegations that are incredible on their face that, you know, no further examination of anyone is required. But in this case, it went further, they examined the witnesses who had relevant information and the judge looked at all that and decided it was not credible. I'm presuming that that decision is based on an evaluation of what the juror alleged versus what the other people with knowledge had to say. Right. That's what I think that, that's what the court said. I think the procedure was right, I think the standard was wrong. The court was not taking... You think the standard is wrong? I think the standard that the court applied was wrong. The procedure was correct. He said, I'm considering, here I have an allegation and then here I have a rebutting of that allegation. And applying the standard that there must be a clear, strong, substantial and incontrovertible evidence, no. I had that word incontrovertible in there because it was in some case, I believe, but it wasn't pretty clear he was saying, I don't believe this juror. I mean, in all the discussion, the judge was pretty clear that he just didn't believe the evidence. He did, he did make that pretty clear. He wasn't bound by any standard that had to be incontrovertible, I mean, I think he read that out of some case, I guess. He did. The case, I think, was brought up by the government on rebuttal, I'll maybe come up with what that was. It seemed, just in reading it, it was very clear that he just didn't believe this evidence. He did make that clear, Your Honor. But I think that the Sixth Amendment, which is what the roots of this problem are, require a process as opposed to a substantive decision by the judge, which may or may not ultimately have been the right one. But it triggers this process. But before you run out of time, could I hear you on the admission of the details regarding the other crimes? Yes, Your Honor. Or will be? There were three of those. I thought, I read in the government's brief last night, I thought they said only two, but there are three of them, two from 1997 and one more recently. The sum and substance of that argument, Your Honor, is that given the time, given the breadth and depth of the description of those crimes read to the jury, it seems like more than a little overkill, wandering into the prejudicial prong of the Queen analysis. How on earth it could be more, how on earth the prejudice of reading these three separate periods of criminal conduct going back to 1997 for the limited purpose of establishing that the firearm that was recovered from the defendant's house was knowingly in his possession? You spent a lot of time in this case on that first issue dealing with sentencing, then we went to jury. This, to me, looks like it's the more interesting issue in this case. You don't have a lot of time to talk about it. I know. But why don't you talk about harmlessness? Because even if this thing is erroneous, how is it harmless? Are we talking about the first argument, Your Honor? Yes. Well, because take those out for a second. Take out the, I mean, what the government successfully did was paint a picture of a career criminal, of a career bank robber, of a career armed robber. So just for the purposes of discussion, set that aside. Well, you've got to separate them. The prior conviction for the possession, I don't think you've got too much monogamy on that. It's the other two. That looks like, to me, you could have a problem. The 90s? The robbers. The robbers. But you had a lot of detail on them and all that's there. You've got the propensity situation seems to be there, but how is it prejudicial? Well, in terms of harmlessness is what you're asking. So setting those aside, what you had was a firearm recovered in a house. You had some admissions by the defendant of knowing it. You had these other, the defendant's wife's testifying that it was her firearm. And then this dust up over these phone calls about who wanted the firearm and who it was for. The government, on the one hand, and I suppose this is the most efficient answer to your The government, on the one hand, says it's a necessary part of their case against the defendant, that they need this evidence. And they needed it, by the way, in the substance in which it was presented to make their case against the appellant. So and I'm sort of inclined to agree. A jury could reasonably conclude that absent that stuff, this may not have been actually this defendant's firearm. Now, ownership is not an element of possession, but the jury could conclude, well, that's not his firearm. That's his wife's firearm or somebody else's firearm. But then they hear this, well, this guy's going back to the 90s. We're talking about 17 years ago. And I'm running out of time. I'm out of time. I'm not running out. I'm out. But going back to the 90s, this guy's a robber. He's an armed criminal. So I'll step back, gentlemen. Thank you. Okay. We'll hear from the government. Mr. Chief Judge, may it please the Court, my name is Leah Bresek. I represent the United States. Let me turn to the 404B issue that Your Honor just raised. The facts matter in this case. And let me make clear certain facts that the defense did not make clear in their argument. We have three prior incidents. One deals with possession. And then the other two. Those are the primary concerns to me. Maybe other judges feel about it. But in terms of how do you get this in, all of these facts dealing with these prior robberies sometime ago? Well, I'm really happy you asked that question, Your Honor. Let me make clear, the record is very clear that the defense never raised an argument to the district court that the omission of the facts surrounding the convictions was overly prejudicial. That is, the defendant never gave the district court the opportunity to entertain the argument as to whether there was a different way of admitting that kind of evidence. He raises that argument for the very first time on appeal. And I do not believe— You're arguing it was done correctly? Your Honor, I would say that there was no clear error that affected substantial rights. You're arguing that this evidence was produced in the correct manner? Your Honor, I'm arguing that there's no obvious and clear error here for these reasons. Is my question hard? No, Your Honor. I'm attempting to answer it. Is it correct or incorrect? Is it a violation of the rule to do what you did or not? No, Your Honor. I believe it was highly probative, given the fact that the defendant made the whole— The details of a prior conviction that's admitted solely under Rule 404B? Your Honor, the facts were actually highly probative as to the issue that the defendant made the key issue in the trial, which was knowledge. In his open— If we do this, wouldn't we be trying a case every time? You'd have all these little mini-trials on these facts of this thing here. It seems to be—I don't remember all the details of 404B, but it does have some limitations on it. Absolutely, Your Honor. But the facts in this case were relevant, if I could explain. The felon in possession was a conviction, and the facts of those cases are the defendant threw a gun into the bushes nearby him. The fact that he knowingly possessed a gun located in close proximity to him is certainly probative on the issue the defendant made the issue of the trial, which is whether— How about robberies? The robbery conviction— Probative of what? He possessed a gun. Well, Your Honor— How are you going to connect those two things up on the 404B? Well, Your Honor, let me say that the 404B evidence of the robberies was actually not wholly dissimilar from the evidence introduced at this case. This trial was about the defendant planning a robbery. The evidence that was presented to this jury was that the defendant was planning an armed robbery, and the government's theory as presented to the jury was the defendant knew that the gun was in his closet because he had obtained the gun in order to commit that planned robbery. As stated in my brief, the evidence that we presented through Russell Battle was recorded calls in which the jury heard the defendant talking about committing a robbery and attempting to get a weapon in order to commit that armed robbery. So the jury heard all of this evidence and then heard how— There's evidence, and those are good facts, but it's totally dissimilar from what he actually was convicted of and what he was being charged with. And there's a serious remoteness of time. You're talking 16 years ago. Your Honor, and I'm happy you brought that up, the convictions— The 404B has any purpose whatsoever. You would think that's probably what it has it for. I mean, you've got to have that connectivity. And even in the cases you cite, maybe it could have been allowed, but you don't get to come and give all these facts. You can get any evidence, maybe, to help the robberies because of the possession of the gun, but the underlying facts— Your Honor, let me submit this. Even if this Court believes it was plain and obvious error for this Court to admit the statement of facts or the facts around these convictions, the government would submit that it did not affect the substantial rights of the defendant because it did not affect the outcome of this case. This is why. The defendant, before any 404B evidence was admitted in this case, the defendant unequivocally indicated that he would testify. Two days into trial, the defense indicated that the defendant would be testifying along with his wife. That's at Joint Appendix 263. Five days later, again, the defendant, before any 404B evidence, unequivocally indicated that he would testify in the case. And, in fact, the Court conducted a colloquy at 1116 of the Supplemental Joint Appendix and the defendant unequivocally indicated at 1135 of the Supplemental Joint Appendix that he intended to testify. And the District Court made a factual finding that his decision to testify was free and voluntary. What I'm saying is, even if this evidence had not been admitted under 404B, the fact that the defendant had been convicted of an armed bank robbery involving use of a firearm would have been before the jury, because when the defendant testified under Rule 609, all three of those convictions would have been admissible as to the credibility of the witness. So, Your Honor, I would submit even if the Court disagrees with the fact that either the... If 609 instead of 404B, the ruling on which it was admitted. Your Honor, I'm arguing as to the substantial rights, which would be the harmless error analysis that the Court requested. And also, if this was plain error, also we'd look at whether the substantial rights of the defendant was affected. So you're absolutely right. I'm saying even... Plain error, at least, and even... Well, it is plain error in terms of the facts. I thought they objected at least to the 404B. They did, Your Honor. What I'm saying... I don't know if you have to do an issue to object on the facts. Maybe you do. I won't go there, but that's a whole different ballgame. You kind of do something typically that's not done. The Court kind of lets you do it. I don't know. You've objected to it coming in, period, from the beginning. Well, Your Honor, I would argue that there are two separate objections. The Court can certainly imagine a circumstance in which convictions would be admissible under 404B, but certain additional facts would be overly prejudicial. So I believe in order to preserve those arguments and give the District Court the opportunity to resolve any issues, that there should be two objections. Not a direct evidence of it. So you've got to do something to be able to prove this constructive possession. He didn't have it. It's not that house, the whole bit, but it's there. You've got clothes and all kinds of stuff around it. And then you bring in this evidence with all these underlying facts. It doesn't sound good. Your Honor, I guess my point is to make... Even if you disagree with the admission of those facts, I'm saying the fact that the defendant committed armed bank robbery involving use of a firearm would have been before the jury in any event, because when he testified, those facts would have been put before the jury by virtue of Rule 609, which allows convictions to imbeach credibility. All three... All the details? If he had taken the stand, all of the details of the firearm robberies would have been admissible? No, you're absolutely correct, Your Honor. The details wouldn't. But my point is the fact that the defendant was an armed bank robber and had used a firearm encompasses... There's no debate about that. No, but my point would simply be that the facts are subsumed within that. The facts indicate that he used a firearm. The conviction indicates he used a firearm. The facts indicate that he committed a robbery of a bank. That conviction would be in. So the point is, I believe this is an example of where the substantial rights of the defendant were not affected, even if this Court disagrees with the... Oh, that's not a problem. Even if the error on Rule 408, then you could have gotten it in 609. Yes, Your Honor. Did you brief that? Your Honor, it's in my brief. I argued no effect of the substantial rights based on the fact that it would have been admitted through 609. And I can provide the cite, Your Honor. It just seems like something's wrong with that. I don't know where it comes from. But that doesn't sound right. That you can get something in under 404B and then come back later and say, well, it would have come in under 609. The trial court never ruled on that one way or the other. The objection never put before the defendant at any time to determine whether or not it should come in under 609. Now you want us to say it's admissible under 609 without there being any evidentiary determination or any type of ruling from the court. That doesn't sound right to me as the basis for saying this thing is harmless, I guess. Well, respectfully, Your Honor, this Court affirms, can affirm a trial record based on any evidence in the record. And in this case, the evidence... We don't want to compare about the code deal. We don't want to just come in and say, all right, you could have gotten it in under another exception to the hearsay rule, even though nobody ever brought it up when it's an example. We kind of like the trial court to make the rulings and then we review them. We don't conduct a trial up here. Your Honor, I completely understand. But respectfully, I would say... Now, what is the other basis for saying this is not prejudicial? For saying that even if it's error, it didn't prejudice the defendant? Other than the fact that it would have come in in any event under Rule 609? Other than the fact that you assert that and then move on to the other part. Your Honor, it also... It's harmless error given the substantial amount of evidence that was presented in this case. As set forth in the brief, the jury heard during the course of a five-day trial substantial amounts of evidence, including two agents testify that the defendant knew that he had obtained... That he knew that the firearm was in his closet. The fact that the firearm was recovered in a closet containing only men's clothing, which they heard. The fact that Russell Battle testified that the defendant had spoken to him about planning an armed robbery in the weeks before the gun was recovered at his house. In fact, on April 4th of 2013, the jury heard the defendant say that he didn't need that gun that he had been repeatedly requesting because he had stumbled up on something.  Again, the theory the government presented at the case was the defendant knew that the gun was in his closet because he had obtained the gun in order to commit the armed robbery that he had been discussing with Russell Battle as the evidence introduced at trial. Let's... I hate to interrupt you. You are on parole. But before you run out of time, I want to take you back to the issue with regard to the juror who filed the affidavit later. Mm-hmm. I read through that and I understand the counter affidavits, so to speak, that were secured that contradicted a lot of what she said. But one of the things she said that bothered me in her affidavit, she said the clerk stated that the judge wanted us to reach a decision on that day because he had a trip that he was scheduled to take the next day. How did she know that? If that statement wasn't made by the deputy clerk to her and to the jury, how did she know that? Your Honor, that's an excellent question. It was one that was discussed at the hearing. The defense suggested that they did not know how she knew it. I will note that in the beginning, when the court was setting its calendar the first day of trial to make sure that the jury could sit the entire period, the court did mention that he had a trip in the distant future. But the details of the trip, Your Honor, I would only indicate that those had to come from the defense because the court... She was told that he was taking a trip the next day and he did have a reservation. But, Your Honor, as the court indicated, he had multiple reservations. That's true. How did she know that? I mean, if she's not telling the truth and if she's not credible, how did she know that back if she wasn't told it by the deputy clerk? Your Honor, I would submit that a lot of the discussions about the trip were made in the presence of the parties. That would be me and the defense counsel. And so I would argue that one obvious way that the juror would have found out is that the juror had to submit the affidavit with the assistance of the defense counsel. So certainly one way that the juror might have known that is that the defense counsel was told that by the judge outside the presence of the jury. That's a mighty strong accusation. I'm simply saying I don't know, but that's certainly one basis. But, Your Honor, I would point to the fact that the major allegation in the juror's affidavit was she had no one available to pick up her kid. On that point, there is absolute evidence indicating that she is not credible. And not only is there a note that includes the name of her mother and her phone number, there's no other way that that could have come to the deputy but through the juror. But also, there are two different courtroom deputies who indicate that not only was one courtroom deputy told, call my mother, she can pick up my kid. The second courtroom deputy actually called the mother was told that she routinely picks up the kid and that she could pick up the kid. And then we have, in addition to that, the FBI agent's interview of the mother where the FBI agent, again, indicates that the mother remembered this conversation. And I'd also note, Your Honor, we submitted to the district court all the other juror notes because remember when the jury unanimously decided to stay late into the night in order to resolve the issue, many, many notes were created with different names and phone numbers of people to be contacted. Agreeing to stay late is consistent with what she says she was told and that all of them were told. The judge wants a verdict tonight because he's got to go out of town tomorrow. Everybody votes, okay, let's keep going. Your Honor, I would actually point you to an email which I think is very relevant on that point. An email that was sent by the courtroom deputy, which is included in the record, which indicates she tells someone when she's ordering food for the jury, I don't know how long they'll stay. They've all decided to stay. Judge Titus said they couldn't stay past 9 o'clock. Again, she had no reason to know that that email would ever be before this court. And yet that email contradicts the statement that the juror is making that everyone was told they had to stay and that they had to stay as late as possible. So I believe the juror note with the mother's name, the email that was sent around the time period of this issue coupled with the three different declarations of the agent and the two courtroom deputies, I think that that is perfectly reasonable for the district court to not abuse his discretion in finding that all of that evidence made the allegations in the affidavit not credible to trigger a Remmer presumption. I'd also note, Your Honor, that the defense faults the district court for failing to apply the Remmer presumption which triggers a hearing and moves the burden to the government. I'd note that the Remmer case or the words presumption of prejudice appear nowhere in the district court briefing, in the district court hearing, and yet the defense is faulting the district court for failing to apply that standard. I note that I disagree with the defense as to what standard was applied. I think the court looked at the credibility of the evidence and found, consistent with the Porter case, I believe, that there was no persuasive credible evidence of improper outside influence and therefore Remmer was not triggered. And I believe that is consistent with this case law. And I've briefed all the reasons why I believe that Remmer does not apply to this circumstance. This is not a case of outside improper influence upon the partiality of a juror. This is not an instance of extra prejudicial information being presented to a juror that was not introduced at trial that bears on a fact. I don't believe the district court abused its discretion in assessing the credibility in determining that no evidentiary hearing beyond the hearing it did hold was required on this particular issue given that the credibility was clearly on its face. And in fact, I'd note, Your Honor, that there was a fact finding by the district court that the affidavit was laced with inaccuracies and it used as an example the fact that there was this journal with the mother's name and the fact that there was this email which clearly contradicted the core of the affidavit which was that there was no one else available to pick up the kid and that's the reason why she changed her vote. Turning back one more time to 404B evidence, I would just submit again that I believe that this court in the case of an appeal from a jury verdict where the jury sat for numerous days this court does look at whether it can affirm on any basis in the record and I would just submit that again even if this court disagrees with the admission of certain parts of the 404B evidence in this case the record is clear that the defendant unequivocally indicated that he would testify before any 404B evidence was introduced. And I would again point to the Joint Appendix 263 and the Supplemental Joint Appendix and the decision that the defendant made unequivocally to testify therefore would mean that under 609 the facts that the defendant was an armed bank robber who used a firearm would have been before the jury in any event and I do believe that that means that the substantial rights of the defendant were not affected. That's absolutely correct. I'd just note that I believe all three convictions clearly fall within Rule 609. They're all within that 10 year period of release from confinement and they're certainly probative of the credibility of the testifying witness as required by Rule 609. So I believe that in this case this court can affirm based on the fact that the defendant's substantial rights were not affected even if this court finds that there was an error in admitting certain facts. Although I'd note again that the defense did not preserve that objection because it never gave the district court the opportunity to entertain whether... Is it a common practice in your jurisdiction when the government is admitting 404B evidence to admit a recitation of all the facts surrounding the conviction? No, Your Honor. And I'm sure that I can say with confidence that had the defense made an objection at that point we would certainly have entertained redacting it or entering into a stipulation. I'm not submitting that that would not have been a possibility. I'm simply saying the district court was given no opportunity to entertain the argument. There's no... Are you saying it's not a common practice if the defense objected? No, Your Honor. It's not a common practice generally and I'd also note again... I'd like to answer your given that you assure us it would not have been done here had the objective, well, the facts I ask you, is a common practice for you to just do it. I mean, if you've got objections then probably it won't come in. Your Honor, I would note that in other cases that have come before this court, for example, in Eklund, this court has found... I'm just asking, I'm just repeating the question Judge Tratcher's asking. Okay. No, it's... It's not a practice that you do. No, it's not common practice to introduce all of the facts. Your Honor, in this case some of the facts that were included were highly probative. The fact, for example, that the District of Virginia conviction involved a silver pistol, this conviction... So you continue to defend getting those facts in under 404B. Your Honor, I have two forms of the argument. I say the district court did not clearly err, and I say the substantial rights of the defendant were not affected. So two parts. I'm just asking you that question in terms of how you proceeded in this case. Your Honor, I believe that had an objection be made, had been made, the court probably would have entertained an argument to redact. So, Your Honor, just in closing I would say that I don't believe the district court erred, abused its discretion in determining that the affidavit before it was not credible, and therefore a Remmer presumption was not triggered, and an evidentiary hearing was not required, at which the government would have bore the burden. On the 404B evidence, again, I would indicate the defense never, the record is clear, the defense never lodged an objection to the introduction of the facts as overly prejudicial, and on plain error review, or even not on plain error review, I would argue the defendant's substantial rights were not affected. The record is clear. The defendant indicated that he intended to testify before any 404B evidence was introduced, and when the defendant testified under Rule 609, those convictions would have come in. Therefore, the fact that the defendant committed armed bank robberies that involved use of a firearm would have been before the jury in any event, even if this court disagrees with the 404B evidence that was admitted in this case. If there aren't any further questions. Thank you. Mr. Mitchell, reply. Thank you, Your Honor. I was unable to find, as I promised I'd try, Your Honor, the incontrovertible proof, but I recognize that as having been somewhere in the argument. I don't want to jump around, gentlemen, but to your questions, Your Honor, Judge Winn, the government moved for the admission of this stuff by pleading prior to trial, and that's in Joint Appendix 15. The defendant objected by written pleading on both a 404B and a 609 basis. So where the government is getting this waiver argument, these issues and these discussions were fairly and fully framed before the court. 404B, to get back to your, I think your first question, Your Honor, 404B includes in its analysis under Queen, its own prejudice-pronged discussion, and generally the burden is on the proponent of the evidence to show its admissibility. I'm just saying that in response to the government's continued rehashing of the position that the district court was somehow denied an opportunity to fully consider what it was doing. The beef in the first hand is the admission of prior convictions without the defendant having testified in the first place. The major problem is, and the turn of phrase I used in my brief, was the gory detail of these prior convictions. I was just sort of reading through them, but it's not just prior robbery, it's he jumped the counter and held a gun and ran off with a bag and had a co-defendant and the... I said it would have come in anyway on the 609 since you said it was going to testify. Just the conviction, right? Just the conviction is admissible as impeachment. She says facts and conviction come in. I am not aware, Your Honor, of a legal mechanism that would allow, unless that somehow became a factual issue in this case, how a prior conviction, the details of a prior conviction, I'm not sure the court is aware either. I suppose if she was able to get those facts in, you'd be able to bring in some witnesses to counter that. Those facts didn't happen and we'd have ourselves a nice little... Trial within a trial, Your Honor. Okay. I did not, and I know I can't because I didn't bring it up, but that second argument, I think I can make a little note in rebuttal on my second argument which is about the hearsay because the government cited in her argument here that in terms of a harmless error analysis, and I would just, I don't need to remind the court, it's not a firm, a conviction on any basis at all. Harmless error analysis applies only if the court can conclude beyond a reasonable doubt that the jury would have reached the same decision. In support of that position, the government brought up Russell Battle's conversation with the defendant, and there was a whole different side of that story framed in my second argument that didn't come in because the court excluded it on hearsay. Not to get into that argument itself on rebuttal, but the idea was that the government was taking the position you didn't need this gun that you were talking to this gentleman about because you had your own gun, that gun being the one we charged you with. And the defendant wanted to take the position, no, I was talking to this other guy, Laidler. The court did not allow it in on the basis that it was hearsay. So the government sort of got this half version before the jury. It didn't hearsay, Your Honor. It does not matter whether or not this fellow Laidler needed a gun. It was not being offered for its truth. It's being offered for what the appellant in this case understood it to be, and I only bring that up. But your client testified, didn't he? He did. And was he questioned about this? I'm sorry, Your Honor, he did not testify. I apologize. His wife testified. So... I thought he said he did testify. Oh, I'm sorry, Your Honor. I don't mean to mislead the court. I think he did testify. So my question is, if he testified, wasn't that an opportunity to go into all this? And that's what the government argued, Your Honor. But that's different hearing it from the defendant's, who has a stake in the outcome of the case, his testimony, than hearing the actual recording through the agent through which the government brought in the other part of the recording. I don't understand why it wasn't admitted when he was offered for evidence when he testified. I think the court's ruling was that the other part of the conversation was not present, and so it was inadmissible hearsay. At this point, Your Honor, answering your question, I don't recall that specific piece of the case, so I don't want to... But you say he wasn't offered for the truth. But I find here in the record, counsel said, the call makes it clear that Mr. Laidlaw was anticipating that Mr. Martin would secure a firearm for him. So you're basically telling the judge, I'm offering it for the truth that Laidlaw was anticipating the gun. Maybe not quite so articulately put at trial. But I suppose for the hearsay analysis, it doesn't matter whether or not Mr. Laidlaw actually needed the gun. No, it doesn't. But I'm just suggesting that counsel offered it for the truth. He didn't say it was an exception to the hearsay rule. He did say later it impeached the police officer, which makes... Why that would be important, I don't know. But anyway, but he did. His argument basically was that it was admitted for the truth. I understand that, Your Honor. As to the impeaching the officer part of it, I think the defense wanted to show that the FBI was sort of picking and choosing what portions of the conversation. But that was up to the USA to put evidence to put on not the police officer. Right. And well, the argument was, I think what he proffered to the court was the conversation between the FBI agent and the AUSA, the FBI agents telling the AUSA here's the evidence that we have. It's not a line of questioning that he was permitted to get into, Your Honor. And I do agree the articulation of the way it was phrased is slightly different. But the fact is the evidentiary value of the statement wasn't dependent upon its truth. It did not really matter whether Mr. Laidlaw needed a firearm. Your Honor, and just to be clear, there is no allegation or evidence, and I don't think the U.S. attorney intended to imply that trial counsel in this case in any way attempted to influence or obstruct or create evidence vis-a-vis this juror issue. There's absolutely nothing to support such a contention. He says that she came to him, came to the defendant's wife and said this is what happened. There's no indication here that trial counsel was somehow manufacturing this. Isn't it pretty clear, though, that the juror knew that she could deliberate until 9 o'clock? She said she didn't, Your Honor. But isn't it pretty well established that it was true that the jury could deliberate to 9 o'clock and order food for the jury? In that respect, the juror was impeached. There's no debate about their ability to stay until 9 o'clock. What the juror, I think, was saying was he told us we were staying past 5 in order to deliberate and reach a verdict. But they stopped at about 5, right? I don't recall that, Your Honor. I think they stopped it around that time, and that's when she said She didn't take her, she had until 9 o'clock, and she chose not to use her allotted time on the basis, on her purported basis, that she had to go pick up her child. So by her own testimony, she wasn't under any compulsion to immediately reach a verdict when she did. She had several hours she could have held out and didn't. Well, under her testimony or affidavit, she said, I had no one to get my child. So I'm deciding this thing now. That was fairly well refuted, though, wasn't it? It was by affidavit, although I think the hearing was the appropriate way to handle that. Thank the Court so much. Unless you have any further questions, I'm over time.
judges: William B. Traxler Jr., James A. Wynn Jr., Norman K. Moon